UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DOUG WERNER, both individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>WATERSTONE MORTGAGE CORPORATION,<br>Defendant. | Case No.:   17-cv-608<br><br>COLLECTIVE ACTION COMPLAINT |

## INTRODUCTION

1. This case is brought to remedy the failure of Defendant Waterstone Mortgage Corporation ("Waterstone"), to pay Plaintiffs wages required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.  Plaintiffs are mortgage loan originators ("loan originators") for Waterstone.

2. Plaintiffs, like loan originators throughout the mortgage industry, work very long hours.

3. Prior to August 2010, Waterstone treated its loan originators as exempt from the FLSA. On March 24, 2010, the U.S. Department of Labor issued an Administrative Interpretation of the FLSA declaring that loan originators were not administratively exempt from the FLSA and withdrawing a prior Wage Hour Opinion Letter to the contrary. In August 2010, Waterstone reclassified 80% to 90% of its loan originators as non-exempt employees under the FLSA. As part of the reclassification, Waterstone structured its compensation to guarantee a minimum wage plus overtime wages. Then in April 2011 Waterstone reclassified all of its loan originators as FLSA non-exempt employees. Nevertheless, Waterstone did not record all of the loan originators' hours it

1

suffered or permitted them to work, and it did not pay minimum wages and overtime wages for hours over forty in a work week.

4. In August 2010, Waterstone explicitly recognized that its loan originators are not exempt from the FLSA and sent its loan originators a new written employment agreement, under which it changed its compensation structure to pay them an hourly wage set at the minimum wage (or higher) rate plus a monthly commission, from which the hourly pay during that pay period was to be deducted. Waterstone then began treating its loan originators as FLSA non-exempt hourly workers requiring that it pay loan originators the minimum wage for each work week, with overtime at the rate of time and one-half for each hour over forty worked in a workweek. Because it had begun paying loan originators hourly, and because Waterstone recognized that loan originators are not exempt from the FLSA, Waterstone was required to pay the minimum wage for each hour worked and time and one-half for all hours over forty worked in a workweek.

5. After the change in August 2010, to evade its FLSA obligations, Waterstone pressured its loan originators to underreport their work hours. Waterstone and its officials and supervisors told loan originators that no matter how many hours they worked, they should not report more than eight hours in a day, and it pressured them not to report more than forty hours per week on their time sheets.

6. Loan originators must work long hours, well over forty in a week, in order to make money, since they must engage in extensive promotional activities necessary to originating loans, such as meeting with realtors and attorneys, attending open houses, networking, and working to process their loans through to closing.

7. Waterstone requires loan originators to bear expenses which are for the benefit and

convenience of Waterstone, such as licensing, meeting, travel, internet, and cell phone expenses, among others. These expenses for the benefit and convenience of Waterstone act as deductions or *de facto* deductions from the minimum wage and overtime earnings of the Plaintiffs.

8. Waterstone knew or should have known that loan originators worked hours in excess of those they reported, because Waterstone pressured them to underreport their hours. Waterstone knew that loan originators had worked long hours prior to moving to the new compensation system, that in fact loan originators routinely worked 8-12 hours per day, 5-6 days per week. Waterstone knows that loan originators never work routine hours, and because Waterstone had not changed loan originators' responsibilities when it moved to the new compensation system, it knew that loan originators typically work well over 40 hours in a week.

9. In *Herrington v. Waterstone Mortgage Corporation*, AAA No. 01 14 0000 4860 (American Arbitration Association), Waterstone stipulated that its loan originators worked 52.5 hours per week.

10. Waterstone also knew or should have known that Plaintiffs were required to bear Waterstone's business expenses.

11. In *Herrington v. Waterstone Mortgage Corporation*, AAA No. 01 14 0000 4860 (American Arbitration Association), Waterstone stipulated that its loan originators incurred $100 of expenses each week.

12. Plaintiffs seek the unpaid minimum wages and overtime premium pay for overtime hours, liquidated damages, costs and attorneys' fees as well as declaratory relief. Werner brings this claim individually and on behalf of other similarly situated employees under

the collective action provisions of the FLSA. 29 U.S.C. § 216(b) (collectively referred to as "Plaintiffs").

## JURISDICTION

13. Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b) of the Fair Labor Standards Act, by 28 U.S.C. § 1331, this action arising under laws of the United States, and by 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce. Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

## VENUE

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

15. Upon information and belief, Waterstone resides in this district.

16. Plaintiff labored for Waterstone within this District.

17. The cause of action set forth in this Complaint arose in this District.

## PARTIES

**Plaintiffs**

18. Plaintiff Werner was an employee of Waterstone. His "Consent to Sue" is attached to the back of this complaint.

19. Plaintiff Werner worked for Waterstone in the state of Wisconsin.

20. Waterstone employed Plaintiff Werner as a loan originator from approximately October 2016 until December 2016.

21. Plaintiff Werner was engaged in commerce in his work for Waterstone.

22. The term "Plaintiffs" as used in this complaint refers to the Named Plaintiff and any additional represented class members pursuant to the collective action provision of 29 U.S.C. § 216(b).

4

23. The Named Plaintiff represents current and former loan originators who have worked for Waterstone between within the three years preceding the filing of a consent to sue by such individual and the date of final judgment in this matter.

24. The Named Plaintiff brings this case as a collective action for class members throughout the U.S. as defined in the preceding paragraph, under the collective action provision of the FLSA as set forth in 29 U.S.C. § 216(b).

**Defendant**

25. Waterstone lists its principal office address as N25W23255 Paul Rd, Pewaukee, WI 53072. Upon information and belief, Waterstone is a corporation having its headquarters and office in Wisconsin and places of business in Wisconsin.

26. Waterstone is southeastern Wisconsin's largest mortgage lender with more than $2.5 billion in annual loan origination volume. It is a wholly owned subsidiary of an FDIC bank, WaterStone Bank SSB (NASDAQ: WSBF) which has assets of more than $1.8 billion. Waterstone employs more than 200 loan originators in 23 states: Alabama, Arizona, California, Colorado, Delaware, Florida, Georgia, Indiana, Iowa, Idaho, Illinois, Maine, Maryland, Michigan, Minnesota, New Hampshire, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Virginia, and Wisconsin.

27. Upon information and belief, Waterstone grossed more than $500,000 in each of the last ten calendar years.

28. Waterstone is an enterprise engaged in interstate commerce for purposes of the Fair Labor Standards Act.

29. Waterstone employed Plaintiffs and participated directly in employment decisions regarding the Plaintiffs for which they seek redress in this case.

30. All actions and omissions described in this complaint were made by Waterstone directly or through its supervisory employees and agents.

## FACTS

31. Plaintiffs are or were loan originators employed by Waterstone to originate mortgage loans.

32. Plaintiffs' job responsibilities were established by Waterstone.

33. Before August 2010, Waterstone treated its mortgage loan originators as exempt from the FLSA.

34. Before August 2010, Waterstone paid its exempt classified loan originators on a commission only basis.

35. In August 2010, Waterstone reclassified 80%-90% of its loan originators as FLSA non-exempt.

36. Waterstone promised its reclassified loan originators that they would receive a regular hourly rate at or above the Federal minimum wage rate plus overtime wages.

37. Also in August 2010, Waterstone changed its loan originator compensation structure, sending each loan officer a new written employment agreement to be executed by the company and the loan officer. The new employment agreement agreed to pay loan originators as FLSA non-exempt employees, under a combination commission and hourly wage structure.

38. Waterstone made the change in compensation and FLSA classification, following changes in the U.S. Department of Labor's regulatory environment, based on the advice it received from its attorneys at the law firm of Offit Kurman, P.A.

39. Beginning in April 2011, Waterstone treated all loan originators as FLSA non-exempt hourly workers requiring that it pay loan originators at least the FLSA minimum wage for

each hour worked, with overtime at the rate of time and one-half for each hour over forty worked in a workweek.

40. Like the other loan originators, Werner was promised a minimum wage for all hours worked, overtime pay premium for hours worked over 40, and commissions.

41. Part of the compensation portion of Werner's employment agreement stated: "at all times Employee shall receive no less than the applicable minimum wage, plus applicable overtime premium, if any, for any hours worked in each workweek."

42. Waterstone required Plaintiffs to comply with company policies, which included its employee handbook.

43. Waterstone's employee handbook informed Plaintiffs that they would receive time and one-half for all hours worked over 40 hours in a work week.

44. Plaintiffs, including Werner, regularly worked more than 40 hours per week for Waterstone.

45. Werner regularly worked more than 45 hours per week.

46. After Waterstone reclassified loan originators as FLSA non-exempt, it instituted a time-keeping system. The recording and tracking of plaintiff loan originators' work is administered and monitored by Waterstone on computerized time keeping systems.

47. To evade its FLSA obligations as well as its contractual promise to loan originators, Waterstone and its supervisors discouraged Plaintiff Werner and other Plaintiffs from accurately reporting all hours they worked.

48. Loan originators must work long hours, well over forty in a week, in order to make commission income exceeding their floor, since they must engage in extensive promotional activities necessary to obtaining referrals and originating loans, activities

such as meeting with realtors and attorneys, attending open houses, networking, etc. They must also engage in extensive loan processing activities to see that the loans they originate are processed through to closing.

49. Waterstone knew or should have known that Plaintiffs, including Werner, were working in excess of 40 hours in a work week.

50. Upon information and belief, some loan originators told Waterstone managers that they were working overtime hours but reporting only 40 hours.

51. Waterstone knew or should have known that Plaintiffs were not recording all the hours they worked, particularly those in excess of 40 hours in a week.

52. Waterstone knew and accepted that LOs were consistently working more than 40 hours per week.

53. Waterstone permitted its branch managers, who supervised Plaintiffs, to circumvent the overtime-compensation provisions in the FLSA and in its own contracts, by discouraging and upon information and belief, in some cases, forbidding loan originators from reporting more than 40 hours.

54. Waterstone knew or should have known that Plaintiffs were recording their hours of work in rote fashion even though a loan originators' hours are never routine, since they must answer calls from prospective customers at all hours of the day, including in the evening and on weekends.

55. In *Herrington v. Waterstone Mortgage Corporation*, AAA No. 01 14 0000 4860 (American Arbitration Association), Waterstone stipulated that each of the 220 loan originators that joined the case had worked a total of 52.5 hours per week and bore $100 per week in unreimbursed business expenses.

56. Waterstone failed to keep accurate time records for all the work Plaintiffs, including Werner, did on a daily or weekly basis.

57. Waterstone failed to pay Plaintiffs, including Werner, overtime compensation at the rate of time and one-half for all hours worked over 40 in a week.

58. Waterstone did not pay Plaintiffs their wages "free and clear."

59. Waterstone requires loan originators to bear expenses which are for the benefit and convenience of Waterstone, including but not limited to travel expenses, internet, and cell phone expenses.

60. Waterstone required Plaintiffs to bear expenses and purchase tools of the trade for their work for Waterstone, which included cell phones, marketing materials, and meals with prospective Waterstone customers or referral resources.

61. Waterstone failed to reimburse Plaintiffs for their purchase of all work tools and supplies.

62. Waterstone's failure to reimburse Plaintiffs for business expenses resulted in wages below the Federal minimum wage.

63. Waterstone knew or should have known that Plaintiffs, including Werner, were bearing business expenses on behalf of Waterstone, yet it failed to reimburse those expenses.

64. Upon information and belief, Waterstone generally paid its Loan Originators their hourly rate, but only for forty hours of work, without overtime premium pay, and without reimbursing expenses that Loan Originators bore on Waterstone's behalf.

65. Waterstone regularly: failed to pay compensation in addition to the LOs' weekly compensation to account for:

    a. The minimum wage due for the actual hours worked, considering the expenses they bore,

      b. Overtime premium pay for the hours they worked over forty, considering the expenses they bore, or

      c. Reimbursement of business expenses Plaintiffs bore on Waterstone's behalf.

66. As a result of the *de facto* deduction resulting from Waterstone's failure to reimburse Plaintiffs' business expenses, Waterstone failed to pay Plaintiffs their regular rate for each hour they worked.

67. Waterstone's stated policy was to pay Plaintiffs time and one-half their regular hourly rate for hours worked over 40 in a week.

68. Waterstone did not pay Plaintiffs time and one-half their regular hourly rate for hours worked over 40 in a week.

69. Waterstone did not pay all Plaintiffs their minimum wages or overtime in compliance with its promise to do so and as required by the FLSA.

70. Waterstone's failure to pay Plaintiff Werner and class members the proper wages required by law was willful.

71. On April 13, 2017, in *Herrington v. Waterstone Mortgage Corporation*, AAA No. 01 14 0000 4860 (American Arbitration Association), Arbitrator Pratt held that: starting in August 2010 Waterstone classified loan originators as non-exempt under the FLSA and in April 2011 all loan originators were classified as FLSA non-exempt; Waterstone was liable to the loan originators under the FLSA for unpaid minimum wages and unpaid overtime, and for unreimbursed business expenses; Waterstone waived and was estopped from asserting the FLSA's outside sales exemption defense to the loan originators' FLSA claims; and loan originators were entitled to FLSA liquidated damages. Arbitrator Pratt awarded the loan originators $7,267,919 in FLSA back minimum and overtime wages.

72. On April 13, 2017, in *Herrington v. Waterstone Mortgage Corporation*, AAA No. 01 14 0000 4860 (American Arbitration Association), Arbitrator George C. Pratt ruled in the Partial Final Award On Liability that:

> Clearly, Waterstone's intent was to treat the LOs as not exempt from governmental wage requirements. There is no other persuasive reason for the classification. In short, Waterstone's new system requiring LOs to report their time by hours was meant to satisfy the requirements of the FLSA and state-law wage and hour requirements as applied to its LOs.
> As determined earlier, despite the new system, and despite the explicit requirements of its employment agreements and employee manuals, Waterstone knew and accepted that its LOs were consistently working more than 40 hours per week and that they were not reporting their hours accurately. Waterstone knew, of course, that to the extent that a branch manager might allow overtime, his own compensation, which was related to the profitability of his branch, could be reduced. In short, Waterstone permitted, or may have even directed, its branch managers to circumvent the overtime compensation provisions in the FLSA and in its own contracts, by discouraging and forbidding LOs from reporting more than 40 hours,
> Waterstone's President Egenhoefer and its Senior Vice President Allen acknowledged in their depositions that its minimum-wage-plus -overtime compensation system was adopted in order to comply with federal (i.e. FLSA) and state wage requirements. At the hearing, however, they both told a story that the change from commission-only was solely so that they could use a new computerized compensation program. I found their hearing testimony on this point to be incredible.
> In making the change, Waterstone was obviously following the advice of counsel in how to comply with governmental requirements. It established the much-disliked time-reporting system in order to legally comply with the minimum wage and overtime regulations of the FLSA and state laws. Then it tolerated or told or its branch managers to arrange that the LOs would not report more than 40 hours. In this way, Waterstone complied in form with FLSA's overtime requirement, but in practice it sought to avoid having to make the overtime payments that otherwise would have been made.
> In practical effect, Waterstone represented to its LOs, not that they were exempt from coverage under the FLSA as it now claims, but that they were non-exempt and that it was providing for them the protections of the FLSA.
> \*\*\*
> By setting up its compensation system, by representing to the LOs that they were non-exempt, by classifying LOs as "non-exempt" in its job description, by hiring new employees and permitting others to continue to work for them after establishing the new system, by tolerating and encouraging the LOs' logging of inaccurate hours into the system, and by continuing that conduct over a period of years, Waterstone has both waived and is estopped from asserting its OSE defense

11

to Claimants' FLSA claims. Consequently, Waterstone is liable to Claimants under the FLSA for unpaid minimum wages, unpaid overtime, some unreimbursed expenses, liquidated damages, and attorney's fees and costs.

73. The decisions of Arbitrator George C. Pratt with respect to Waterstone's liability under the FLSA are res judicata and Waterstone is collaterally estopped from relitigating its minimum wage and overtime liability to Loan Originators, the Plaintiffs in this case.

## CAUSE OF ACTION
## (FAIR LABOR STANDARDS ACT)

74. Defendant failed to pay overtime wages to Plaintiff Werner and the class of Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §207 et seq. and its implementing regulations.

75. Defendant's failure to pay proper wages for each hour worked over 40 per week was willful within the meaning of the FLSA.

76. Defendant failed to pay minimum wages to the class of Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §206 et seq. and its implementing regulations.

77. Defendant's failure to pay proper minimum wages for each hour worked per week was willful within the meaning of the FLSA.

78. Defendant's failure to comply with the FLSA overtime and minimum wage protections caused Plaintiffs to suffer loss of wages and interest thereon.

**WHEREFORE,** Plaintiff requests that this Court enter an Order:

1. Declaring that the Defendant violated the Fair Labor Standards Act;
2. Declaring that the Defendant's violations of the FLSA were willful;
3. Granting judgment to Plaintiffs for their claims of unpaid wages as secured by the Fair Labor Standards Act, as well as an equal amount in liquidated damages;
4. Awarding Plaintiffs their costs and reasonable attorneys' fees;

5.  Awarding the Named Plaintiff a service payment for his service to the class; and

6.  Pre-judgment interest.

Dated: August 4, 2017

                Respectfully Submitted,

                /s/ Dan Getman

                Dan Getman (Pro Hac Vice)
                GETMAN, SWEENEY & DUNN, PLLC
                260 Fair Street
                Kingston, NY 12401
                phone: (845) 255-9370
                fax: (845) 255-8649
                Email: dgetman@getmansweeney.com
                Email: mdunn@getmansweeney.com

                ATTORNEYS FOR PLAINTIFFS

## CONSENT TO SUE UNDER THE FLSA

I, Doug Werner, hereby consent to be a plaintiff in an action under the Fair Labor Standards Act, 29 U.S.C. §201 et seq., to secure any unpaid wages, minimum wages, overtime pay, liquidated damages, attorneys' fees, costs and other relief arising out of my employment with Waterstone Mortgage Corporation and any other associated parties.

I authorize Getman, Sweeney & Dunn, PLLC, and any associated attorneys as well as any successors or assigns, to represent me in such action.

Dated: 8-3-17